NO. COA13-1434

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

    v.                              Wake County
                                    No. 12 CRS 222413
ERIC DONOVAN MASSENBURG


    Appeal by defendant from judgment entered 10 May 2013 by

Judge G. Wayne Abernathy in Wake County Superior Court.  Heard

in the Court of Appeals 22 April 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney*
> *General Victoria L. Voight, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate*
> *Defender Jillian C. Katz, for defendant-appellant.*


    BRYANT, Judge.


    Where the trial court's *Allen* charge to the jury was in

substantial compliance with N.C. Gen. Stat. ' 15A-1235, there

was no coercion of the jury verdict.  Where the sentence imposed

was within the presumptive range, the trial court did not abuse

its discretion by imposing an intermediate sanction of special

probation.

    On 10 December 2012, defendant Eric D. Massenburg was

indicted on charges of felonious breaking or entering and

assault inflicting serious bodily injury. The matter was brought to trial during the 7 May 2013 session in Wake County Superior Court, the Honorable G. Wayne Abernathy, Judge presiding.

The evidence presented at trial tended to show that on the evening of 23 September 2012, defendant accompanied his mother Henrietta Massenburg to the home of defendant's ex-sister-in-law Patricia Massenburg. Then, defendant left. Patricia's boyfriend Joe Perry was at the residence. Henrietta called defendant after Joe began cursing at her and ordering her to leave. When defendant returned to the residence, Joe brandished a butcher's knife. Though testimony differed as to whether Joe put the knife down prior to the time defendant began hitting him, the testimony was consistent in showing that defendant punched Joe repeatedly. Due to defendant's assault, Joe spent three days in the hospital, lost several of his teeth, and had a plate inserted into his jaw.

At the close of the evidence, the charge of felonious breaking and entering was dismissed but the State was allowed to proceed on the charge of misdemeanor breaking or entering. The trial court instructed the jury on misdemeanor breaking or entering and assault inflicting serious bodily injury. At five

o'clock, after a few hours of deliberation, the jury advised the court that it had reached a unanimous verdict on the charge of breaking or entering but could not agree on the assault inflicting serious bodily injury charge and did not feel they would reach a unanimous verdict with more time. The court emphasized to the jury that it was their duty to reach a verdict if they could do so without surrendering their honest convictions, then instructed the jury that deliberations would resume the following morning.

The next day, the jury returned a verdict of guilty on the charge of assault inflicting serious bodily injury and a verdict of not guilty on the charge of misdemeanor breaking or entering. Defendant appeals.

_____

On appeal, defendant raises the following two arguments: the trial court (I) erred in failing to properly instruct the jury; and (II) abused its discretion in sentencing defendant to an active term of imprisonment.

*I*

Defendant argues that after receiving notice that the jury was deadlocked, the trial court erred in failing to properly instruct the jury of its duty to make reasonable efforts to

reach a unanimous verdict pursuant to General Statutes, section 15A-1235, also known as an *Allen* charge,[1] and as a result, the jury's guilty verdict was coerced. We disagree.

Initially, we note that defendant failed to preserve this issue for review as he failed to object to the trial court's jury instruction that he now challenges. *See* N.C. R. App. P. 10(a)(2) (2014) (objection required to allow appeal of a jury charge); *see also State v. Storm*, ___ N.C. App. ___, ___, 743 S.E.2d 713, 716 (2013) (Where the defendant failed to object to the trial court's instruction and did not object after the trial court's instruction, the challenge was not properly preserved.). Therefore, we review this matter for plain error.[2] *See State v.*

---

[1] *Allen v. United States*, 164 U.S. 492, 501—02 (1896) (finding no error in trial court's reinstruction to jury where jury could not reach a unanimous verdict. The Supreme Court reasoned that "[w]hile, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment; or that he should close his ears to the arguments of men who are equally honest and intelligent as himself.").

[2] Defendant cites to *State v. May*, ___ N.C. App. ___, 749 S.E.2d

*Williams*, 315 N.C. 310, 328, 338 S.E.2d 75, 86 (1986) (reviewing the defendant's challenge to the trial court's *Allen* charge based on a failure to comply with General Statutes, section 15A-1235 for plain error where the defendant failed to preserve his argument at trial).

"[P]lain error review in North Carolina is normally limited to instructional and evidentiary error." *State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) (citation omitted); *see generally State v. Conley*, ___ N.C. App. ___, ___, 724 S.E.2d 163, 169, *disc. review denied*, 366 N.C. 238, 731 S.E.2d 413 (2012) ("Where trial counsel fails to object to the trial court's instructions in response to a question from the jury seeking clarification, we review for plain error."). "Preserved legal error is reviewed under the harmless error standard of review. Unpreserved error in criminal cases, on the other hand, is reviewed only for plain error." *Lawrence*, 365 N.C. at 512, 723 S.E.2d at 330 (citations omitted).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant

---

483 (2013), for the proposition that this issue is subject to harmless error analysis as opposed to plain error. We note, however, that our Supreme Court has granted a stay as to *May*. We therefore do not use it as a basis for our standard of review or analysis of this issue.

must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.

*Id.* at 518, 723 S.E.2d at 334 (citations omitted).

Pursuant to North Carolina General Statutes, section 15A-1235, "[i]f it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b)." N.C. Gen. Stat. ' 15A-1235(c) (2013).

> (a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.
>
> (b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:
>
>> (1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
>>
>> (2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
>>
>> (3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if

> convinced it is erroneous; and
>
> (4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

*Id.* § 15A-1235 (a), (b).

Defendant contends that the trial court's *Allen* charge failed to instruct the jury in accordance with section 15A-1235(b)(3), "a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous[,]" and because of this omission, he is entitled to a new trial. We disagree.

In *Williams*, 315 N.C. 310, 338 S.E.2d 75, the defendant argued that the trial court's *Allen* charge failed to comply with General Statutes, section 15A-1235(b)(3) and (4). The Court reasoned that "whenever the trial judge gives the jury any of the instructions authorized by N.C.G.S. § 15A-1235(b), whether given before the jury initially retires for deliberation or after the trial judge concludes that the jury is deadlocked, he must give all of them." *Id.* at 327, 338 S.E.2d at 85.

> Since the trial judge gave the instruction after forming the opinion that the jury was deadlocked, he committed error when he gave the instructions set out in N.C.G.S. § 15A-1235(b)(1) and (2), but failed to give the

instructions set out in N.C.G.S. § 15A-1235(b)(3) and (4).

This error does not, however, automatically entitle the defendant to a new trial.

*Id.* at 327, 338 S.E.2d at 86. In *State v. Fernandez*, 346 N.C. 1, 484 S.E.2d 350 (1997), our Supreme Court reasoned as follows:

[t]he trial court's instructions did not suggest that jurors should surrender their beliefs or include extraneous references to the expense and inconvenience of another trial, as has been found erroneous by this Court.

Moreover, by comparing the trial court's instructions with those contained in Section 15A-1235 above, it is clear that the trial court's instructions contained the substance of the statutory instructions. The instructions fairly apprised the jurors of their duty to reach a consensus after open-minded debate and examination without sacrificing their individually held convictions merely for the sake of returning a verdict.

*Id.* at 22—23, 484 S.E.2d at 363—64 (citations omitted).

Here, the trial court gave the following charge:

THE COURT: Ladies and gentlemen, I want to emphasize to you the fact that it is your duty to do whatever you can to reach a verdict. You should reason the matter over together as reasonable men and women and reconcile your differences if you can without surrendering any conscious convictions. No juror should surrender his honest convictions as to the weight or the effect of the evidence solely because the opinion of a fellow juror or for the mere

> purpose of returning a verdict. Each of you must decide this case for yourself with impartial consideration [of] the evidence. Y'all have a duty to consult with one another and to deliberate with the view of reaching an agreement if it can be done without injury to your personal judgment.

We acknowledge that the trial court's charge fails to state the words of section 15A-1235(b)(3) verbatim. However, it is clear that the trial court's instructions contain the substance of General Statutes, section 15A-1235(b). Moreover, we again note that based on *Fernandez*, the substance of the instruction "fairly apprised the jurors of their duty to reach a consensus after open-minded debate and examination without sacrificing their individually held convictions merely for the sake of returning a verdict." *Id.* at 23, 484 S.E.2d at 364; *see also State v. Gettys*, ___ N.C. App. ___, ___, 724 S.E.2d 579, 586 (2012) (reviewing for plain error the trial court's *Allen* charge). Accordingly, we overrule defendant's argument.

*II*

Next, defendant argues the trial court abused its discretion and violated the Equal Protection Clause of both the United States and North Carolina constitutions by choosing to impose upon defendant a term of special probation of 135 days in the Division of Adult Correction as an intermediate sanction.

Specifically, defendant argues the trial court chose a sentence with active time as opposed to regular probation because defendant would "never make [enough] money working . . . to pay back taxpayers for the cost of Medicaid." We disagree.

"In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color." *Griffin v. Illinois*, 351 U.S. 12, 17, 100 L. Ed. 891, 898 (1956). "If the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of defendant's rights." *State v. Johnson*, 320 N.C. 746, 753, 360 S.E.2d 676, 681 (1987) (citation and quotation omitted). "'A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.'" *State v. Cameron*, 83 N.C. App. 69, 76, 349 S.E.2d 327, 332 (1986) (quoting *State v. Pope*, 257 N.C. 326, 335, 126 S.E.2d 126, 133 (1962)).

Here, after hearing from defendant who requested a mitigated-range sentence of 11 to 23 months with a short active

sentence, and the State's request of a presumptive range sentence, the trial court imposed a presumptive range sentence of 19—32 months. The sentence contained an intermediate sanction – a term of special probation of 135 days in the Division of Adult Correction. The trial court then gave the following basis for the sentence imposed:

> THE COURT: . . . Well, I noticed that the Defendant has three prior breakings and possession of schedule six and possession of a firearm with obliterated serial number. That, of course, is of concern. What bothers me is that he has probation violations six times for the same offense. In a perfect world, I would leave him on probation, make him pay back the taxpayers who probably paid $50-$75,000 in Medicaid damage he did to this man's head. But he won't make probation. He won't make it in the sense he'll never make the money working at McDonald's to pay back the taxpayers for the cost of Medicaid.
>
> It does appear to me that the force was clearly excessive in this case . . . . But regardless, I think the jury has spoken. I believe they've spoken correctly.
>
> Stand up, please, [defendant]. The lawyers are right, the range of sentences provided to me to choose from by the legislature range from a minimum of 11 months to a maximum of about 32 months in the presumptive range, and they also allow for suspension. I want you to realize you sentenced the victim in this case to a lifetime of a plate in his jaw and only half the teeth in his head, so he doesn't ever get over this.
>
> How much time is he doing in federal?
> . . .

[Defense counsel]: He's got 24 months, additional months, he's pulling everyday.

THE COURT: Well, I'll take into consideration the fact he's going to be in prison for 24 months in the federal system as a result of this violation, this conviction. Rather than your straight active sentence which was my inclination, which I would do if he did not have the 24 months facing him, which he will serve.

. . .

I was going to sentence him at the bottom of the presumptive and make it all active. What I think I'm going to do is move -- that was my thought process, maybe move to the top of the presumptive and give him some suspension.

In this case, madam clerk, the Defendant admits that he has five points for felony sentencing purposes, which makes him a level two. This is a class F felony. It is the judgment of the Court that the Defendant be imprisoned in the [Division] of Adult Corrections for Male Prisoners for a minimum of [19] months and a maximum of [32] months; however, in view of the fact he is going to be in prison for 24 months in the federal system, the Court is going to suspend all but [four months and 15 days (135 days)], and he's placed on supervised probation for 24 months on the condition that he have no contact with the victim or any witnesses for the State.

It appears the trial court's reference to a sentence of probation was intended as consideration of an exceptional circumstance – "[i]n a perfect world, I would leave him on

probation, make him pay back the taxpayers who probably paid $50-$75,000 in Medicaid damage." However, the trial court's sentence could be considered lenient by most accounts: Defendant was a Level II offender convicted of a violent Class F felony, sentenced in the presumptive range, but given a special probationary sentence of 135 days in the Division of Adult Correction, as opposed to a straight active sentence. Defendant was also serving or about to serve an active sentence in the federal system. On this record, defendant cannot show that the sentence ordered by the court was a discriminatory sentence predicated on poverty. The trial court did not abuse its discretion, engage in procedural conduct prejudicial to defendant, operate in circumstances manifesting an inherent unfairness and injustice, or engage in conduct offensive to a sense of fair play. *See Cameron*, 83 N.C. App. at 76, 349 S.E.2d at 332. Defendant's argument is overruled.

No error.

Judges HUNTER, Robert C., and STEELMAN concur.