An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-244

Filed 4 June 2025

Stanly County, Nos. 21CRS000265-830, 21CRS000268-830, 21CRS000269-830

STATE OF NORTH CAROLINA

v.

JAMES MORGAN LEOPARD

Appeal by Defendant from judgment entered 6 April 2023 by Judge Jonathan Wade Perry in Stanly County Superior Court. Heard in the Court of Appeals 25 September 2024.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Mary L. Lucasse, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katherine Jane Allen, for Defendant-Appellant.*

CARPENTER, Judge.

James Morgan Leopard ("Defendant") appeals from judgment entered after a jury found him guilty of two counts of attempted second-degree forcible sexual offense and one count of crimes against nature. On appeal, Defendant argues the trial court erred by imposing consecutive sentences based on improper considerations. After

careful review, we discern no error.

## I. Factual & Procedural Background

On 12 July 2021, Defendant was indicted on fourteen sexual offenses upon the return of true bills of indictment by a Stanly County grand jury. On 27 March 2023, Defendant's trial began in Stanly County Superior Court, where the evidence tended to show the following. Defendant was a family friend of K.R.N. In 2004, K.R.N. and his parents moved into a home on Defendant's property. Thereafter, Defendant's sexual abuse of K.R.N. began and continued into 2019.

On 6 April 2023, the jury returned guilty verdicts on two counts of attempted second-degree forcible sexual offense and one count of crimes against nature. At sentencing, the State sought the imposition of consecutive sentences, while Defendant requested concurrent sentences. The State noted Defendant was convicted of indecent liberties with a minor in 2004, had served a year in prison for the previous conviction, and was a registered sex offender through 2016. The State also presented virtual testimony from Defendant's biological daughter, wherein she stated:

> This is a day that I'd lost hope for, but I've always prayed for. I, his blood, am also a victim. I've been a victim my whole life. I grew up manipulated and groomed and conditioned and abused by this criminal. I know that I'm not the first. God willing, [K.R.N.] will be the last. I speak for all those who could not come - - could not or would not come forward as they suffer in silence.
>
> It was mentioned how [Defendant] had served - - or how he

served as a state trooper and he was spoken of as a hero. In truth, he took an oath to serve and protect, but he took advantage of people, his power, and his influence, where he (inaudible) d[id] what he want[ed] (inaudible). If he got to me, his own blood, what would he do to a random stranger? We were all prey.

. . . .

Over [twenty] years ago, I tried my best to beat the cycle for another little girl. Unfortunately, (inaudible) and he was shown special treatment and [he] was released on good behavior and that's why we're here today.

Defense counsel, on the other hand, sought to have Defendant's sentences run "concurrently instead of consecutively because justice does need to be metered with mercy" and argued:

[T]hese people are sitting here in support of [Defendant] today, his family and his church family. He's a deacon in the church. And despite all the allegations that are made and despite the attempts to besmirch him and despite the district attorney's plea, where has [Defendant] been for the last two years?

Since he evicted this family and since these charges came out, he's been out on bond. He hasn't been arrested. He hasn't been charged with anything. Nobody's made any allegations against him. He does not appear to be a danger to society.

Defendant spoke on his own behalf at the sentencing hearing:

I'd just like to thank my church family, my minister, his wife, my wife, and all the people from my church being here in support of me.

. . . .

- 3 -

> Every man sins. I've made my mistakes. I don't tell you I
> haven't made mistakes all of my life, because I am a sinner.
> I sin daily. I try my best to pray to the Lord and say, Lord,
> you know, I know I have, forgive me of my past, and I pray
> these things to you, Jesus Christ, my savior. Thank you,
> sir.

Thereafter, the trial court consolidated one count of attempted second-degree forcible sexual offense with the count of crimes against nature. On this judgment, the trial court sentenced Defendant in the presumptive range to 59 months minimum and 131 months maximum in the custody of the Department of Adult Corrections. On the remaining count of attempted second-degree forcible sexual offense, the trial court sentenced Defendant in the presumptive range to 59 months minimum and 80 months maximum in the custody of the Department of Adult Corrections. The trial court ordered that the two sentences run consecutively. Defendant entered timely notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issue

The issue is whether the trial court erred by imposing consecutive sentences based on improper considerations.

## IV. Analysis

On appeal, Defendant argues the trial court reversibly erred by considering a victim impact statement from an individual who was not a victim, testifying witness,

or family member of K.R.N. during sentencing. Specifically, Defendant argues the trial court's decision to impose consecutive sentences was unfairly swayed by the improper victim impact statement. We disagree.

## A.     Standard of Review

"When multiple sentences of imprisonment are imposed on a person at the same time . . . the sentences may run either concurrently or consecutively, as determined by the court." N.C. Gen. Stat. § 15A-1354(a) (2023). "The trial court has discretion to determine whether to impose concurrent or consecutive sentences." *State v. Nunez*, 204 N.C. App. 164, 170, 693 S.E.2d 223, 227 (2010) (citations omitted). " 'A decision entrusted to a trial judge's discretion may be reversed only if it is manifestly unsupported by reason or so arbitrary that it could not have been a reasoned decision.' " *State v. Pickens*, 385 N.C. 351, 360, 893 S.E.2d 194, 200 (2023) (quoting *State v. Brown*, 314 N.C. 588, 595, 336 S.E.2d 388 (1985)).

## B.     Sentencing

"A sentence 'within the statutory limit will be presumed regular and valid,' unless 'the record discloses that the court considered irrelevant and improper matter[s] in determining the severity of the sentence.'" *State v. Meadows*, 371 N.C. 742, 748, 821 S.E.2d 402, 407 (2018) (quoting *State v. Johnson*, 320 N.C. 746, 753, 360 S.E.2d 676, 681 (1987)); *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). During sentencing hearings, the trial court is "permitted wide latitude and

the rules of evidence are not strictly enforced." *State v. Smith*, 300 N.C. 71, 81, 265

S.E.2d 164, 171 (1980) (citations omitted).

> The primary purposes of sentencing a person convicted of a crime are to impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

N.C. Gen. Stat. § 15A-1340.12 (2023). The trial court may consider "'such matters as

the age, character, education, environment, habits, mentality, propensities and

record of the defendant.'" *State v. Johnson*, 265 N.C. App. 85, 87–88, 827 S.E.2d 139,

141 (2019) (quoting *State v. Morris*, 60 N.C. App. 750, 754–55, 300 S.E.2d 46, 49

(1983)).

Where the record is clear that the trial court relied upon improper

considerations in determining the severity of a sentence, the defendant may be

entitled to a new sentencing hearing. *See State v. Boone*, 293 N.C. 702, 712, 239

S.E.2d 459, 465 (1977). Our precedent, some of which was decided prior to the

General Assembly's passage of Structured Sentencing, contains guidance on what

constitutes an improper consideration. For example,

> our Courts have held it is improper during sentencing for a trial judge to consider a defendant's refusal to accept a plea offer, *Boone*, 293 N.C. at 712, 239 S.E.2d at 465, the financial status of a defendant, *State v. Massenburg*, 234 N.C. App. 609, 615, 759 S.E.2d 703, 707–08 (2014), the religious beliefs of either a defendant or the judge, *State v.*

> *Earls*, 234 N.C. App. 186, 194, 758 S.E.2d 654, 659, *disc.*
> *review denied*, 367 N.C. 791, 766 S.E.2d 643 (2014), and
> conduct not included in the indictment, *State v. Swinney*,
> 271 N.C. 130, 133, 155 S.E.2d 545, 548 (1967).

*Johnson*, 265 N.C. App. at 88, 827 S.E.2d at 141.

On the other hand, in *State v. Pickens*, our Supreme Court considered a statement by the trial court where the alleged impropriety of its sentencing considerations was less clear:

> [t]o say the facts of this case are egregious is putting it
> mildly. The facts of this case are among the worst I've ever
> seen, and I've seen a lot of cases, thousands as a prosecutor,
> thousands as a judge . . . [a]nd in truth, they get
> traumatized again by being here, but it's absolutely
> necessary when a defendant pleads not guilty. They didn't
> have a choice and you [the defendant], had a choice.

*Pickens*, 385 N.C. at 360–61, 893 S.E.2d at 201. On appeal, this Court reasoned the trial court's statements "revealed that it had improperly considered [the defendant]'s exercise of his constitutional right to a jury trial when imposing [his] sentence" and there was a "clear inference that a greater sentence was imposed because [the] [d]efendant did not plead guilty." *Id.* at 361–62, 893 S.E.2d at 201–02. Our Supreme Court disagreed and in reversing this Court, explained that "an equally reasonable inference could be drawn that the [trial] court was not referring to [the defendant]'s exercise of his right to a jury trial and instead was referring to the egregious nature of [the defendant]'s crimes and his decision to commit those crimes." *Id.* at 364, 893 S.E.2d at 203.

Here, the State offered a statement from Defendant's biological daughter. According to Defendant, the trial court improperly considered her statement because Defendant's daughter was not a victim, testifying witness, or relative of the victim. But even assuming the statement was improper, the trial court gave no indication that it considered the daughter's statement in its imposition of consecutive sentences.

The mere fact that a trial court heard an allegedly improper statement from Defendant's daughter, without more, is insufficient to show the trial court "considered" the statement in its decision to impose consecutive sentences. *See Meadows*, 371 N.C. at 748, 821 S.E.2d at 407; *see also State v. Smith*, 352 N.C. 531, 554, 532 S.E.2d 773, 788 (2000) (holding the trial court's decision to allow victim impact testimony "was well within the wide latitude allowed trial judges in North Carolina in conducting sentencing hearings."). Therefore, Defendant failed to rebut the presumption of regularity. *See Meadows*, 371 N.C. at 748, 821 S.E.2d at 407. As the record fails to demonstrate Defendant's sentence was swayed by any improper consideration, the trial court did not abuse its discretion in imposing consecutive sentences.

## V. Conclusion

We conclude the trial court did not abuse its discretion in sentencing Defendant to consecutive sentences.

NO ERROR.

Judges ARROWOOD and STADING concur.

Report per Rule 30(e).